UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROBERT J. MEIZLIK,

        Petitioner,

v.                                    Case No. 3:17-cv-1064-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

       Petitioner Robert Meizlik, an inmate of the Florida penal system, initiated this action on September 5, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Meizlik challenges a 2007 state court (St. John's County, Florida) judgment of conviction for two counts of sexual activity with a child while in familial or custodial authority and one count of lewd or lascivious conduct. Meizlik raises four grounds for relief. <u>See</u> Petition at 7-16.[2] Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Response to Order to Show Cause (Response; Doc. 5) with exhibits (Resp. Ex.).[3] Meizlik filed a brief in reply. <u>See</u> Petitioner's

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

[3] The transcripts from the trial and other relevant hearings are included in Exhibit A, the record on direct appeal, of Respondents' Response but have different pagination than the rest of the record on appeal. Accordingly, the Court will refer to the transcripts as Tr.

Response to the State's Reply of Order to Show Cause (Reply; Doc. 9). This case is ripe for review.

## II. Relevant Procedural History

On January 3, 2007, the State of Florida (State) charged Meizlik by way of Amended Information with two counts of sexual activity with a child while in familial or custodial authority (counts one and two) and one count of lewd or lascivious conduct (count three). Resp. Ex. A at 60. At the conclusion of a trial, a jury found Meizlik guilty as charged as to each count. Id. at 96-98. The circuit court sentenced Meizlik to a term of life imprisonment as to counts one and two and 112.5 months in prison as to count three. Id. at 102-11. The circuit court ordered the sentences for counts two and three to run concurrently with the sentence imposed on count one. Id. at 102, 108.

Meizlik appealed his convictions and sentences to Florida's Fifth District Court of Appeal (Fifth DCA). Id. at 114. Prior to filing his initial brief, Meizlik, through counsel, filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (Rule 3.800(b)(2) Motion), in which he argued the court erred in imposing court costs and fees. Id. at 258-60. The circuit court granted the motion. Id. at 298-300. Meizlik, with the assistance of counsel, filed another Rule 3.800(b)(2) Motion (Second Rule 3.800(b)(2) Motion), requesting that the circuit court issue an amended court costs order. Id. at 301-02. The circuit court granted this motion as well. Id. at 307. On November 21, 2007, the circuit court entered a corrected judgment to reflect the appropriate court costs and fees. Id. at 335-41. That same day, Meizlik filed a second amended motion to correct sentencing error pursuant to Rule 3.800(b)(2) (Amended Second Rule 3.800(b)(2) Motion), in which he realleged the claims raised in the Second Rule 3.800(b)(2) Motion

and also argued that he should be resentenced as to count three because of an incorrect scoresheet. Id. at 308-10. Following a hearing on December 21, 2007, the circuit court granted the Amended Second Rule 3.800(b)(2) Motion and resentenced Meizlik pursuant to a corrected scoresheet to the same sentence previously imposed. Id. at 346-53, 365-71.

During the pendency of Meizlik's direct appeal, the Florida Department of Corrections sent a letter to the State Attorney's Office stating that Meizlik met the criteria to be designated as a sexual predator, but that it never received a copy of written findings from the circuit court designating him as such. Id. at 358. The State then moved to declare Meizlik a sexual predator. Id. at 359. On January 21, 2008, the circuit court granted the motion and designated him as a sexual predator. Id.

Meizlik's appellate counsel ultimately filed the initial brief on March 17, 2008. Resp. Ex. B. Meizlik argued that the circuit court erred: (1) in denying his motion for mistrial; and (2) by granting the State's motion to submit similar fact evidence at trial. Id. The State filed an answer brief, Resp. Ex. C, and Meizlik filed a reply brief. Resp. Ex. D. On March 3, 2009, the Fifth DCA per curiam affirmed Meizlik's convictions and sentences without a written opinion. Resp. Ex. E. Meizlik moved for rehearing, Resp. Ex. F, which the Fifth DCA denied on April 22, 2009. Resp. Ex. G. On July 21, 2009, Meizlik filed a petition for writ of certiorari with the United States Supreme Court. Resp. Ex. I. The Supreme Court denied the petition on October 5, 2009. Resp. Ex. J. Meizlik moved for rehearing, which the Supreme Court denied on December 14, 2009. Doc. 1-1.

On June 1, 2010, Meizlik filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. K at 1-35.[4] In the Rule 3.850 Motion, Meizlik alleged that his counsel was ineffective for failing to: (1) conduct an adequate pre-trial investigation; (2) call five witnesses; (3) ensure he was arraigned on the amended Information and failing to inform him of two plea offers; (4) call an expert witness; (5) object to similar fact evidence; and (6) move for a mistrial. Id. at 1-32. Meizlik also raised a claim that the cumulative impact of counsel's errors prejudiced him. Id. at 32-34. On October 18, 2011, the circuit court denied grounds three, five, and six, and set an evidentiary hearing to address grounds one, two and four. Id. at 64-70. Following the evidentiary hearing, the circuit court denied relief on the remaining grounds. Id. at 317-26. On July 18, 2017, the Fifth DCA per curiam affirmed the denial of the Rule 3.850 Motion without a written opinion, Resp. Ex. O, and issued the Mandate on August 11, 2017. Resp. Ex. P.

On November 21, 2011, Meizlik filed a pro se petition for writ of habeas corpus with the circuit court, in which he alleged the trial judge was absent during voir dire and, alternatively, his appellate counsel was ineffective for failing to raise this claim on direct appeal. Resp. Ex. Q at 9-13. On February 22, 2012, the circuit court denied the petition. Id. at 15-18. Meizlik moved for rehearing, which the circuit court also denied. Id. at 150. On January 29, 2013, the Fifth DCA per curiam affirmed the denial without a written opinion. Resp. Ex. U. Meizlik filed a motion for rehearing. Resp. Ex. V. The Fifth DCA

---

[4] Exhibit K is the entirety of the record on appeal of the Rule 3.850 proceedings. The Court will cite to the page number assigned for the record on appeal located at the bottom of each page of the exhibit.

denied the motion for rehearing on February 28, 2013. See Meizlik v. State, 144 So. 3d 555 (Fla. 5th DCA 2013).

On July 17, 2012, Meizlik filed a petition for writ of habeas corpus with the Fifth DCA alleging appellate counsel was ineffective for failing to raise on direct appeal the issue of whether the trial judge erred by being absent during voir dire. Resp. Ex. X. The State filed a motion to dismiss the petition. Resp. Ex. Y. The Fifth DCA granted the motion to dismiss on March 25, 2013. Resp. Ex. AA. Meizlik filed a motion for rehearing, Resp. Ex. BB, which the Fifth DCA denied on May 2, 2013. Resp. Ex. CC.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Meizlik's] claim[s] without

further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[6] supra, at 747–748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).
[8] Murray v. Carrier, 477 U.S. 478 (1986).

errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Meizlik alleges that his appellate counsel on direct appeal was ineffective for failing to raise claims of ineffective assistance of trial counsel and a claim that the circuit court violated his due process rights when "a misdemeanor judge sat and conducted the voir dire on a felony case . . . ." Petition at 7-8. Meizlik also alleges that his appellate counsel should have argued that trial counsel was unprepared for voir dire, did not properly investigate his case, did not timely file his witness list, and told the circuit court that the defense had no intentions of calling witnesses. Id. at 7.

Respondents argue that Meizlik's claim that appellate counsel gave ineffective assistance is unexhausted because although Meizlik raised a similar claim in his petition for writ of habeas corpus filed with the state appellate court, the Fifth DCA ultimately dismissed the petition as untimely. Response at 6-7. In his Reply, Meizlik argues that this claim is exhausted because he timely raised the issue in state court and has included exhibits that he alleges Respondents failed to include in their Response that demonstrate such. Reply at 3.

Under Florida law, claims of ineffective assistance of counsel must be brought via a petition for writ of habeas corpus in the court to which the appeal was taken. Fla. R. App. P. 9.141(d). Pursuant to Rule 9.141(d)(5), a petition alleging ineffective assistance of appellate counsel must be filed not more than two years after the judgment and sentence become final on direct review unless counsel affirmatively misled the petitioner about the results of the appeal, and in no event shall such a petition be filed more than four years after the judgment and sentence become final on direct review. Respondents

contend that Meizlik's direct appeal became final on October 5, 2009, when the United States Supreme Court denied his petition for writ of certiorari. Response at 2. Meizlik maintains that, contrary to Respondents' contention, his direct appeal became final on December 14, 2009, when the United States Supreme Court denied his motion for rehearing. Reply at 3. Attached to Meizlik's petition is documentation corroborating Meizlik's position that the Supreme Court denied his motion for rehearing on December 14, 2009. <u>See</u> Doc. 1-1. Supreme Court records reflect the same. <u>See</u> <u>Meizlik v. Florida</u>, 558 U.S. 1102 (2009). Accordingly, pursuant to Rule 9.141(d)(5), Meizlik had until December 14, 2011, to file with the Fifth DCA a petition for writ of habeas corpus raising claims of ineffective assistance of counsel.

Attached to Meizlik's Reply is a petition for writ of habeas corpus filed with the <u>circuit court</u> on November 21, 2011, in which Meizlik alleged ineffective assistance of appellate counsel or in the alternative, requested the circuit court to "surrender jurisdiction" to the Fifth DCA to address his claims against appellate counsel. Doc. 9-1. Meizlik also attaches a copy of a petition for writ of habeas corpus raising claims against his appellate counsel that he filed on April 23, 2012, which the Fifth DCA treated as an appeal of the denial of the petition he filed in the circuit court. Resp. Ex. Y at 3. On July 17, 2012, Meizlik filed a petition for writ of habeas corpus with the Fifth DCA alleging similar claims of ineffective appellate counsel. Resp. Ex. X. The State filed a motion to dismiss the petition as untimely, Resp. Ex. Y, and the Fifth DCA granted the motion to dismiss on March 25, 2013. Resp. Ex. AA. Based on this record, Meizlik did not timely file a petition for writ of habeas corpus with the Fifth DCA. His filing with the circuit court was not sufficient to satisfy Rule 9.141(d)(b) because he did not file it in the proper court, the

Fifth DCA, and, even assuming Meizlik did file a petition with the Fifth DCA on April 23, 2012, it would have been untimely. As such, Meizlik failed to exhaust this claim. Meizlik has not demonstrated cause and prejudice to excuse this procedural default and has likewise not alleged a fundamental miscarriage of justice to overcome this default either. Accordingly, the claim in Ground One is due to be dismissed as procedurally defaulted.

Nevertheless, even if this claim was properly exhausted, it is meritless. Under Florida law, county court judges can preside over circuit court matters. See Physicians Healthcare Plans, Inc. v. Pfeifler, 846 So. 2d 1129, 1134 (Fla. 2003) (noting that county court judges can be assigned to perform circuit court work on a temporary basis); Fla. R. Jud. Admin. 2.215(b)(4) ("The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit."). Additionally, it is not improper to have a different judge preside over jury selection than the judge who will try the case. See State v. Singletary, 549 So. 2d 996, 999 n.2 (Fla. 1989) ("The judge conducting voir dire need not be the one before whom the case is tried. The presence of a judge, not any particular judge, is what is required."). As such, there would have been no basis for appellate counsel to raise a challenge regarding the absence of the circuit judge in the initial brief. Counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Regarding Meizlik's claim that appellate counsel should have raised claims of ineffective assistance of trial counsel on direct appeal, such claims generally are not

cognizable on direct appeal when the issue was not raised before the trial court. Rutherford v. Moore, 774 So. 2d 637, 647-48 (Fla. 2000). Only in the rare circumstance where the ineffectiveness is apparent on the face of the record such that it would be a waste of judicial resources to require the trial court to consider the claim is it appropriate to address on direct appeal. Id. Meizlik's claim concerning his trial counsel is conclusory and he does not identify facts addressing prejudice. Accordingly, the Court finds that Meizlik's claim of ineffective assistance of trial counsel does not meet this rare exception. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). For the above stated reasons, the relief on the claim in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Meizlik avers that his trial counsel was ineffective for the reasons he stated in his Rule 3.850 Motion. Petition at 10-11. In the Rule 3.850 Motion, Meizlik raised the following allegations of ineffective assistance, counsel failed to: (1) conduct an adequate pre-trial investigation; (2) call five witnesses; (3) ensure he was arraigned on the amended Information and inform him of plea offers; (4) call an expert witness; (5) object to similar fact evidence; and (6) move for a mistrial. Resp. Ex. K at 1-32. Meizlik also raised a claim that the cumulative effect of counsel's errors prejudiced him. Id. at 32-34. The Court will address each of these claims of ineffective assistance separately.

### Ground Two (A)

Meizlik asserts that his counsel failed to conduct an adequate pre-trial investigation. Specifically, he contends that counsel should have investigated Meizlik's

son, who testified against Meizlik at trial as a similar fact witness. Resp. Ex. K at 1-9. Such an investigation, according to Meizlik, would have demonstrated that Meizlik's ex-wife and her husband abused his son prior to Meizlik gaining custody of him. Id. Additionally, Meizlik asserts that counsel should have investigated the instant messages sent between the victim, Meizlik's daughter, and his son, which he claims demonstrate that his son and the victim set him up because his son was mad at him over money and the victim was mad at him because she was being disciplined for bad behavior. Id. According to Meizlik, counsel also should have obtained the victim's diary to demonstrate that she never recorded any instances of abuse. Id. Finally, Meizlik contends that his counsel failed to review the dependency proceedings regarding the victim, interview or depose witnesses, consult a proctologist, and investigate the similar fact evidence.[9] Id.

The circuit court denied relief on this claim following an evidentiary hearing, explaining, in pertinent part:

> This Court finds that Mr. Rawlins' statement that he was not ready for trial and subsequent request for a continuance are not demonstrative of ineffectiveness. Had Mr. Rawlins stated that he was not ready, and then performed deficiently at trial, his claim of not being ready would carry more weight. In this case, the Court finds that Mr. Rawlins' performance at trial was not deficient, and thus his statement to the Court that he was not ready does not mean that Mr. Rawlins was ineffective. At the evidentiary hearing, Mr. Rawlins testified that despite the Judge's denial of a continuance, he was able to prepare and effectively litigate the William's[10] [sic] Rule hearing. . . .
>
> . . . .

---

[9] Meizlik raises the latter three arguments in separate grounds; therefore, the Court will address the merits of these three claims below.

[10] Williams v. State, 110 So. 2d 654 (Fla. 1959).

Mr. Rawlins was clearly aware of [Meizlik's son's] December 22, 2005 deposition as he used it to question him at the Williams Rule hearing. Mr. Rawlins used the 2005 deposition at the Williams Ruling hearing to attempt to point out possible inconsistencies in [his] testimony. This Court finds that Mr. Rawlins was not deficient for failing to depose [Meizlik's son] when a deposition had been taken on the same subject matter approximately one year earlier.

Defendant claims that Mr. Rawlins was ineffective due to his failure to challenge [Meizlik's son's] credibility at trial and failure to present [his] prior abuse by his step-father. At the evidentiary hearing, Defendant testified that Mr. Rawlins should have brought up instances of bad behavior from [Meizlik's son's] childhood. Mr. Rawlins' theory of defense at trial was that [Meizlik's son] and B.M. were lying and that [Meizlik's son] wanted to get back at his [father] for stealing money from him. Mr. Rawlins asked [Meizlik's son] questions at trial that would support this theory. Mr. Rawlins attempted to show that [Meizlik's son] was lying to get revenge on his father for stealing his money. Mr. Rawlins attempted to challenge [Meizlik's son's] credibility by focusing on the fact that [he] revealed his abuse at the same time he was angry with his [father] for stealing his money. This Court finds that Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards by asking questions in line with his theory of the case and declining to bring up alleged bad behavior from [Meizlik's son's] childhood.

. . . .

Although challenging [Meizlik's son's] credibility would have furthered Mr. Rawlins' theory of the case, questioning [him] regarding his [son's] abuse could also potentially bolstered [Meizlik's son's] credibility since the abuse was "founded" according to the New York child protective services. Because [Meizlik's son] did not in fact "lie on the stand" regarding previous abuse, and because counsel is strongly presumed to have rendered adequate assistance and made all significant decision in the exercise of reasonable professional judgment, this Court finds that Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards in his questioning of [Meizlik's son].

The Defendant makes general claims as to the content of emails and I-messages between [Meizlik's son] and B.M. that he alleges show they conspired against him, but has failed to show with any specificity what they contained that would have impacted the outcome of the trial. At the evidentiary hearing, Defendant did not question Mr. Rawlins regarding any emails or I-messages between B.M. and [Meizlik's son]. Further, this Court has reviewed the I-Messages between [Meizlik's son] and B.M. attached to [Meizlik's son's] deposition as "Exhibit 1." The I-Messages contain conversations between [Meizlik's son] and B.M. in which B.M. confides in [Meizlik's son] and seeks help. In the I-Messages, [Meizlik's son] attempts to determine the extent of the abuse and assists B.M. with coming forward, but there is no indication of a conspiracy. Therefore, this Court finds that Defendant has not proven deficiency and has not satisfied the prejudice requirement of Strickland.

Id. 319-23 (record citations omitted). The Fifth DCA affirmed the denial of relief without issuing a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two (A) is without merit. Concerning the history of

---

[11] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Meizlik's son as it relates to the time he spent living with his mother and stepfather, the record reflects that at the evidentiary hearing on the Rule 3.850 Motion, Meizlik's trial attorney, Robert Rawlins, Esq., testified that he did not inquire with Meizlik's son about his past because as a similar fact witness, he did not want his testimony to become a feature of the trial. Resp. Ex. K at 725. Moreover, Rawlins testified that during his pre-trial investigations he learned of several potentially prejudicial events that Meizlik's ex-wife recalled about Meizlik and he did not want to open the door to this evidence by delving into Meizlik's son's past relationship with Meizlik, his mother, or his stepfather. Id. at 724-25. Indeed, Detective George Harrigan testified at the same hearing that his investigations had uncovered the fact that police had previously investigated Meizlik concerning a murder in New York and the New York department of children and family services had investigated allegations that Meizlik had sexually abused a foster child in his care. Id. at 701-04. Additionally, Rawlins testified that his file, which would have contained all documents given to him, did not contain any evidence regarding psychological examinations Meizlik paid for his son. Id. at 761-63. Accordingly, the Court finds Rawlins decision not to delve into Meizlik's son's history at trial was a sound trial strategy, and, therefore, Rawlins was not ineffective. See Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Strickland, 466 U.S. at 690) ("In assessing an attorney's performance under Strickland, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'").

Regarding the instant messages sent between Meizlik's son and the victim, the Court has reviewed the messages and finds they do not support Meizlik's conspiracy theory. Resp. Ex. K at 454-73. Instead, the messages reflect Meizlik's son explaining his

relationship with his father, the victim describing how Meizlik treated her, Meizlik's son trying to comfort the victim through a tumultuous time, and investigating the best methods in which to report the abuse. Id. As such, these instant messages would not have been material to Meizlik's proposed defense and would not have changed the outcome of the trial. Accordingly, Meizlik has failed to demonstrate deficient performance or prejudice.

Concerning the victim's diary, at the Rule 3.850 hearing, Rawlins testified that he reviewed the diary but had admissibility concerns about it. Id. at 725. According to Rawlins, he also did not think introducing the diary to prove a negative would hold much weight at trial. Id. at 725-26. The Court agrees. Merely because the victim did not recount the abuse in her diary is not proof that it did not occur. As such, the Court finds the decision not to use it was reasonable and that the diary would not have held much if any weight in attacking the credibility of the victim.

Next, with regard to counsel's alleged failure to review the dependency proceedings that involved the victim, Meizlik's son, and Meizlik, the record refutes this claim. Rawlins testified that he discussed the dependency case with Meizlik and reviewed Meizlik's son's deposition from the dependency proceeding and used it to craft his cross-examination at the Williams Rule hearing and at trial. Id. at 709, 727-28, 743-44. Therefore, Meizlik has failed to demonstrate deficient performance. Based on the above analysis, the Court finds that relief on the claim in Ground Two (A) is due to be denied.

Ground Two (B)

Meizlik contends that his counsel failed to call Dr. Richard Carpenter, Detective Harrigan, Dr. Mark Messinesc, Dean Blue, and Valerie Gordon as witnesses at his trial. Id. at 9-18. According to Meizlik, Carpenter, a forensic evaluator of sexual perpetrators,

should have been called as an expert to opine that he did not find Meizlik's son or the victim's allegations of abuse credible. Id. at 10-12. Meizlik alleges that Harrigan would have testified that Meizlik provided Harrigan with documentation that the victim claimed to be an adult woman on social media to attract boys to write to her and documents showing that Meizlik's son did in fact receive counseling. Id. at 12-13. Additionally, Meizlik claims that his son told Harrigan that he, Meizlik, had a mole on his penis, but Meizlik gave Harrigan documentation refuting that as well. Id. at 13-14. Notably, at the evidentiary hearing, Meizlik also claimed that Harrigan told Meizlik he thought Meizlik was innocent and that he did not believe the victim's story. Id. at 591-93. Meizlik asserts that counsel should have called Messinesc to testify that he examined Meizlik's penis and that there was no mole present on it. Id. at 14-16. Lastly, as to Blue and Gordon, Meizlik asserts that these witnesses would have testified that the victim told Meizlik that the victim was sexually harassed at school and that Meizlik went to Blue and Gordon and asked them to investigate the abuse. Id. at 16-18. Meizlik maintains that this would have refuted the victim's testimony that she did not trust any school officials enough to discuss Meizlik's sexual abuse of her. Id.

In denying this claim, the circuit court stated in pertinent part:

> The Defendant has made no showing that Dr. Carpenter's testimony would have been admissible at the criminal trial. The case law demonstrates that courts are very careful regarding expert testimony in sexual abuse cases. Hadden v. State, 690 So. 2d 573 (Fla. 1997) (Upon proper objection prior to introduction of psychologist's expert testimony offered to prove alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused, trial court must find that psychologist's testimony is admissible under *Frye* standard for admissibility of novel scientific evidence); see also Dennis v. State, 698 So. 2d 1356 (Fla. 1st DCA 1997) (Expert testimony presented by

prosecution, that alleged victim exhibited symptoms consistent with those of child suffering from child abuse accommodation syndrome, was not admissible). This Court finds Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards in his decision not to call Dr. Carpenter.

The Defendant claims that Mr. Rawlins never deposed Detective Harrigan and testified that Detective Harrigan made statements that he believed the Defendant was innocent and thought [Meizlik's son] and B.M. were lying. However, Detective Harrigan testified to the contrary at the evidentiary hearing. Detective Harrigan testified that he never made any statements or in any way insinuated that he thought Defendant was innocent. Defendant also claims that [Meizlik's son] told Detective Harrigan that he had never seen a psychiatrist and Defendant gave Mr. Rawlins medical bills indicating otherwise. However, no questions were asked of Detective Harrigan at the evidentiary hearing on this matter. Also, Detective Harrigan was, in fact, deposed in this case. It is clear from his testimony that Detective Harrigan would not have helped Defendant's case. This Court finds that Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards in his decision not to call Detective Harrigan.

Defendant claims that Dr. Mesenesc [sic] was not deposed or interviewed and testified that Dr. Mesenesc [sic] could refute [Meizlik's son's] prior statement that Defendant had a mark on his penis. In fact, Dr. Mesenesc [sic] was deposed and Mr. Rawlins testified that he secured his presence at trial in the event he felt it was necessary to call him. After [Meizlik's son] testified without mentioning the mark on the Defendant's penis, Mr. Rawlins testified that he made the decision not to call Dr. Mesenesc [sic]. Defendant argues that Mr. Rawlins should have elicited testimony about the mark from [Meizlik's son] and then brought in an expert to show there was no mark. This Court finds that Dr. Mesenesc's [sic] potential testimony was trivial since Dr. Mesenesc [sic] did not examine Defendant until many years after [Meizlik's son] described the mark. Also, Dr. Mesenesc stated in his deposition that if the mark was a mole it could have been removed or if the mark was a wart is could have faded or been removed. Further, eliciting testimony from [Meizlik's son] regarding Defendant's penis would bring in new allegations of abuse. At the trial, [Meizlik's son] was limited to testifying

about incidents where Defendant penetrated [his] anus with fingers. Having [Meizlik's son] testify that he saw Defendant's penis (even in an effort to impeach his credibility) could have done more harm than good. This Court finds that Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing standards in his decision not to call Dr. Mesenesc [sic].

The Defendant testified that Mr. Rawlins ignored the prospective testimony of Dean Blue and Valerie Gordon regarding a situation involving sexual abuse at school in which B.M. confided in the aforementioned individuals. Defendant claims these witnesses would have discredited B.M. because their testimony would show she trusted teachers and would have confided in them regarding abuse. At the evidentiary hearing, Mr. Rawlins could not specifically recall why he chose not to call these witnesses. However, Defendant's assertion that these witnesses would have discredited B.M. is unconvincing. Defendant testified that he brought B.M. to these administrators himself after she declined to handle the situation. So it does not follow that B.M. speaking with the witnesses about abuse in the aforementioned situation means that she would have reported her abuse by Defendant to them. Further, in Defendant's own words, B.M.'s allegations of abuse to Dean Blue and Valerie Gordon were true. This raises the possibility of bolstering B.M.'s credibility by introducing prior allegations of abuse that were deemed to be true. This Court finds that Mr. Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards in his decision not to call Dean Blue and Valerie Gordon.

Id. at 323-26 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief on this claim without issuing a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two (B) is meritless. Concerning Carpenter, in Florida "[i]t is well-established that an expert may not directly testify as to the truthfulness of the victim in a child sexual abuse case." Oliver v. State, 977 So. 2d 673, 677 (Fla. 5th DCA 2008). At the Rule 3.850 Motion hearing, Rawlins testified that he did not hire Carpenter as an expert because Meizlik could not afford him and Rawlins had concerns over the admissibility of his testimony. Resp. Ex. K at 718-19. Although Meizlik contends that he had the money to pay Carpenter, he has failed to demonstrate by clear and convincing evidence that the circuit court's factual determination on this matter was incorrect. See 28 U.S.C. § 2254(e)(1). Based on this record, the Court finds counsel's decision not to call Carpenter was a reasonable strategic decision. See Knight, 936 F.3d at 1340; Oliver, 977 So. 2d at 677.

As to Messinesc, Meizlik's son never testified that he observed a mole on his penis; therefore, there would have been no reason to call Messinesc as a witness. Moreover, as the circuit court pointed out, raising this issue with Meizlik's son would have introduced activity outside the scope of the circuit court's ruling on the extent of his testimony and opened the door to prejudicial information. Accordingly, Meizlik has failed to demonstrate deficient performance or prejudice. Likewise, Harrigan's testimony at the evidentiary hearing established that Harrigan did not believe Meizlik was innocent and that he never told Meizlik he thought the victim and Meizlik's son were lying. Resp. Ex. K at 700, 702-

03. Harrigan also testified that he did not recall ever receiving any documentation from Meizlik concerning the victim's postings on social media. Id. at 704-05. Calling Harrigan at trial would not have supported Meizlik's defense. As such, Rawlins was not ineffective for failing to call him.

Finally, as to Blue and Gordon, at trial the victim testified that she did not tell teachers, or other people, about Meizlik's sexual battery of her. Trial Transcript at 54-58. Meizlik testified at the Rule 3.850 Motion hearing that the victim first came to him about the allegations related to two boys at her school fondling her. Resp. Ex. K at 573-76, 652-54. He asked her if she wanted him to handle it and she said yes, which led him to contact Blue and Gordon to discuss the issue. Id. Thereafter, Blue and Gordon met with the victim privately. Id. Meizlik's own retelling of the events demonstrates that the victim did not want to handle the misconduct by herself and that Meizlik initiated the discussion with the teachers. As such, this would not have severely impacted the victim's credibility such that the outcome of the trial would have been different. The Court finds there is no reasonable probability that the outcome of the trial would have been different had counsel called these witnesses. In light of the foregoing, Meizlik is not entitled to relief on his claim in Ground Two (B).

Ground Two (C)

Meizlik asserts that his counsel failed to ensure that he was arraigned on the Amended Information and failed to inform him about the new charges and the potential life sentence he faced. Resp. Ex. K at 18-19. Additionally, Meizlik avers that counsel never told him about two plea offers the State had presented. Id. at 19-20. Had he known he

was facing life in prison and of the existence of the offers, Meizlik contends he would have

entered the plea rather than proceed to trial. Id.

The circuit court denied this claim, reasoning:

> Defendant was originally charged with lewd and lascivious conduct - victim under 16 Defendant 18 or older. On January 3, 2007, an Amended Information was filed adding two counts of sexual activity with a child while in familial or custodial authority, a capital felony. On January 10, 2007, Defendant's attorney filed a Waiver of Personal Appearance at Arraignment. On January 26, 2007, prior to the jury being sworn for trial, the following exchange occurred:

>> MR. RAWLINS: In addition to that, Judge, while we're putting things on the record. Earlier today the State conveyed a plea offer to myself, which I conveyed to my client, which was that if he chose -- if he wanted to he could plead to the L&L, they would drop the two capital charges. And it's our understanding that he would score out somewhere at the bottom end, around 36 months. Obviously, the top end would be 15 years on the L&L. And if he wanted to plead to that, the State would agree to that, and we would have a range for you to sentence him.

>> I have conveyed that to my client, and he is not interested in the plea; is that correct, Mr. Meizlik?

>> THE DEFENDANT: That's correct.

>> MR. RAWLINS: And we are ready to go to trial.

>> THE COURT: All right. And Mr. Meizlik, you understand that if the jury convicts you of the capital offense in this case, that the Court would have no discretion on the sentencing and there could only be once [sic] sentence?

>> THE DEFENDANT: Yes, sir.

MR. RAWLINS:     And I have conveyed that
to him, Judge, that this is a capital felony with a
life sentence.

THE COURT:     All right. And I just want to
make sure there's full knowledge of what the
range of sentencing is, and that the Court would
have no discretion in sentencing if you were
convicted as charged in this case, that you're
rejecting the State's plea offer with the full
knowledge of that?

THE DEFENDANT: Yes, ma'am.

The record shows that Defendant was clearly informed he was
charged with a capital offense and he was facing life in prison
and, with this knowledge, Defendant rejected a plea offer from
the State. Therefore, Defendant's claim in Ground Three is
refuted by the record and will be denied.

Id. at 66-67 (record citations omitted). The Fifth DCA per curiam affirmed the denial of

this claim without a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to

relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to

deference, the claim in Ground Two (C) is without merit. The record reflects that Meizlik

was arraigned on the Amended Information and that his counsel waived his appearance

29

at that arraignment. Resp. Ex. A at 65. At the beginning of Meizlik's trial, his counsel put on record the State's plea offer and represented he had discussed the offer and the possibility of a life sentence with Meizlik. Tr. at 4-6. The circuit court inquired with Meizlik about the offer and sentence, and Meizlik affirmatively acknowledged declining the offer. Id. Moreover, at the evidentiary hearing on his Rule 3.850 Motion, counsel testified that his notes reflected two plea offers and that he conveyed those offers to Meizlik, who rejected them because he professed his innocence. Resp. Ex. K at 711-14, 746-53. Accordingly, as the record refutes this claim, Meizlik is not entitled to relief and Ground Two (C) fails.

Ground Two (D)

Meizlik contends this his counsel was ineffective for failing to consult with and call a proctologist. Id. at 21-23. According to Meizlik, the victim stated the penetration did not cause pain, only mild discomfort. Id. Based on this testimony, Meizlik contends that his counsel should have called the proctologist to explain that the digital penetration of the victim's anus as the victim described would have caused intense pain, tearing, and bleeding. Id.

The circuit court denied this claim following an evidentiary hearing, explaining:

> In Ground Four, Defendant claims that his trial counsel was ineffective for failing to consult with, or call a proctologist as an expert witness to dispute B.M.'s claims. However, there was no testimony by B.M. that excessive force was used or that there was any actual penetration by the Defendant's fingers, simply that he "started to put them up inside me." Mr. Rawlins testified that he did not recall B.M. testifying about the degree of penetration involved. Defendant has failed to show how a medical exam many years after the incident would have impacted the trial. A proctologist examining B.M. several years later would have offered no relevant evidence or affected the outcome of the trial. This Court finds that Mr.

Rawlins did not act outside the broad range of reasonable assistance under prevailing professional standards in his decision not to call a proctologist.

Id. at 326 (record citations omitted). The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two (D) is meritless. At trial, the victim testified that "[Meizlik] started to put them up inside of me . . . " for a couple of seconds. Tr. at 34-35. There is nothing from this testimony that a proctologist could have disputed because the victim did not state how far the fingers went into her anus or how much force was used. Moreover, the incident lasted mere seconds. As the criminal charges were brought years after the incident, a medical examination would have been useless as well. Notably, counsel stated the same during the evidentiary hearing. Resp. Ex. K at 717. Accordingly, it was a reasonable decision on counsel's part not to call a proctologist. Meizlik has failed to demonstrate deficient performance or prejudice; therefore, relief on his claim in Ground Two (D) is due to be denied.

Ground Two (E)

Meizlik asserts that his counsel was ineffective for failing to object to the admission of similar fact evidence and failed to move for a mistrial when that evidence became a feature of the trial. Resp. Ex. K at 23-29.

In denying this claim, the circuit court stated:

> In Ground Five, Defendant claims that his trial counsel was ineffective for failing to move to exclude, object to the admission of, or move for a mistrial where the Williams Rule evidence lacked the requisite similarity and became a feature of the trial. This claim is refuted by the record. The Court initially held a hearing on the Williams Rule issue, and Defendant's attorney presented thorough arguments opposing the admission of any such evidence. Defendant's attorney placed another objection on the record prior to the Court's ruling on the motion. The Court ruled that the evidence was admissible. During his testimony, [Meizlik's son], the Williams Rule witness, overstepped the boundary established by the Court as to the Williams Rule evidence, but Defendant's attorney immediately objected and moved for a mistrial. The motion for mistrial was denied. The actions of Defendant's attorney addressed to the Williams Rule issue fell within the broad range of reasonable assistance under prevailing professional standards; therefore, Ground Five will be denied.

Id. at 67-68 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief on this claim without issuing a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two (E) is meritless. At the hearing on the similar fact evidence, counsel objected to and argued against the introduction of any evidence regarding Meizlik's son. Tr. at 191-256. Counsel again raised arguments against the introduction of the evidence at the beginning of the trial. Id. at 4. When Meizlik's son testified outside of the scope the circuit court had ordered, counsel moved for a mistrial, which was denied. Id. at 67-74. Accordingly, the record refutes Meizlik's allegations of deficient performance. As such, the claim in Ground Two (E) fails.

Ground Two (F)

Meizlik alleges that his trial counsel was ineffective for failing to move for a mistrial when the State elicited testimony that Meizlik's son revealed information about the molestation during a polygraph test. Resp. Ex. K at 29-32. According to Meizlik, under Florida law evidence that a witness took a polygraph test is inadmissible. Id. at 29. However, at trial, Meizlik contends that his son testified he had disclosed the molestation during a polygraph test as part of his interview for a sheriff's department in California. Id. at 29-30. Meizlik maintains his counsel should have objected to the testimony and moved for a mistrial because it impermissibly bolstered Meizlik's son's credibility in the eyes of the jury. Id. at 30-31.

The circuit court denied this claim, reasoning:

> In Ground Six, Defendant claims his trial counsel was ineffective for failing to move for a mistrial when the State elicited testimony from [Meizlik's son] that he had to reveal that he had been molested by the defendant while taking a

polygraph test. Defendant argues that mere evidence that a witness took a polygraph test suggests that the witness is being truthful about the subject matter of the test given. Defendant's attorney did not act outside the broad range of reasonable assistance under prevailing professional standards in failing to move for a mistrial on this basis, and there is not a reasonable probability that the result in the case would have been different if Defendant's attorney would have moved for a mistrial. [Meizlik's son] made brief mention of a polygraph test during testimony regarding who he informed about his father molesting him.

. . . .

First, the Court notes that the witness never stated that the abuse was discussed during the polygraph. He simply indicated that a polygraph was part of the rigorous process he had to go through as part of the sheriff application. Further, the witness did not testify as to the results of the polygraph and no inference was raised as to the result of the polygraph. White v. State, 17 So. 3d 822, 824 (Fla. 5th DCA 2009) ("the mere mention of a polygraph examination is not prejudicial when no inference is raised as to the result or any inference that could be raised is not prejudicial"). Therefore, Ground Six will be denied.

Id. at 68-70 (record citations omitted). The Fifth DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Exs. O, P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Meizlik is not entitled to relief on the basis of this claim.

Nevertheless, even if the Fifth DCA's adjudication of this claim is not entitled to deference, the claim in Ground Two (F) is without merit. In Florida, "the polygraph cannot be recognized as a sufficiently reliable or valid instrument to warrant its use in judicial proceedings unless both sides agree to its use." Davis v. State, 520 So. 2d 572, 573-74 (Fla. 1988) (citations omitted). However, "not every reference to a polygraph exam is inadmissible, nor does every improper admission of the taking of a polygraph exam require a mistrial." Olivera v. State, 813 So. 2d 996, 998 (Fla. 4th DCA 2002) (quoting McFadden v. State, 540 So. 2d 844, 845 (Fla. 3d DCA 1989)). "[T]he mere mention of a polygraph examination is not prejudicial when no inference is raised as to the result or any inference that could be raised is not prejudicial." White, 17 So. 3d at 824.

At trial, when the prosecutor asked Meizlik's son if he had discussed the molestation when he applied to be a sheriff's deputy in California, he answered:

> I did. I revealed in, I believe it was the end of 2001, I had applied to become a sheriff and had to go through a rigorous process, interview process, polygraph, psych. exam, all of that, and I had to reveal the fact that I was abused during that.

Tr. at 77. Here, Meizlik's son merely mentioned a polygraph test and did not raise an inference as to its result. Moreover, when read in context, Meizlik's son does not state he revealed the abuse during the polygraph test itself but rather during the rigorous interview process. As such, this testimony was not inadmissible or improper. See Olivera, 813 So. 2d at 998; White, 17 So. 3d at 824. Accordingly, counsel cannot be deficient for failing to raise a meritless objection. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Therefore, relief on the claim in Ground Two (F) is due to be denied.

Ground Two (G)

Meizlik alleges the cumulative impact of counsel's errors prejudiced him. Resp. Ex. K at 32-34. Although the circuit court reserved ruling on this claim until after the evidentiary hearing, it did not specifically address this claim in its final order. As such, this claim is exhausted. <u>See</u> <u>Ogle v. Johnson</u>, 488 F.3d 1364, 1369 (11th Cir. 2007) ("A habeas petitioner exhausts available state remedies when he fairly presents his claim for a state remedy even if the state never acts on his claim."). However, because the state court did not adjudicate this portion of the claim on the merits, the Court must conduct a de novo review of this sub-claim instead of a deference analysis. <u>See</u> <u>Mason v. Allen</u>, 605 F.3d 1114, 1119 (11th Cir. 2010) ("When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review de novo."). Because each of Meizlik's claims of ineffective assistance of counsel are meritless, his claim of cumulative error is likewise without merit. <u>See</u> <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012). Accordingly, relief on Ground Two (G) is due to be denied.

### C. Grounds Three and Four

As Ground Three, Meizlik contends that the state courts violated his right to a complete and independent review of his conviction and sentence when the Fifth DCA denied his request to amend and correct the record on appeal of the denial of his Rule 3.850 Motion. Petition at 12-13; Docs. 1-7, 1-9. In Ground Four, Meizlik contends that the circuit court and Fifth DCA violated his equal protection and due process rights and committed fraud when the record on appeal of the denial of his Rule 3.850 Motion was

manipulated so that favorable testimony and his proof of innocence was not included. Petition at 15; Doc. 1-9.

Respondents contend that the claims in these two grounds are not cognizable in federal habeas proceedings because the claims address issues unrelated to the cause of Meizlik's detention. Response at 19-20. In his memorandum of law, Meizlik maintains these claims are cognizable because transcripts and record documents are a prerequisite to deciding the merits of an appeal. Doc. 1-9. Under the United States Constitution, if a defendant's conviction cannot be meaningfully reviewed on <u>direct</u> appeal because of a deficient record, then this is a violation of the defendant's procedural due process rights and the conviction should be vacated. <u>See</u> <u>Bush v. Sec'y, Dep't of Corr.</u>, 888 F. 3d 1188, 1196 (11th Cir. 2018) (citing <u>Entsminger v. Iowa</u>, 386 U.S. 748, 750 (1967)). However, "[a] trial transcript plays a different role in Rule 3.850 proceedings." <u>Id.</u> In <u>Bush</u>, the Eleventh Circuit held that the state court's post-conviction proceeding did not violate Bush's procedural or substantive due process rights despite there being missing portions of the trial transcript. <u>Id.</u> at 1197. Moreover, the Court agrees the claims in Grounds Three and Four do not relate to the cause of Meizlik's detention. <u>See</u> <u>Carroll v. Sec'y, Dep't of Corr.</u>, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."); <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir. 1987) (citation omitted) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction. Because claim (1) goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief."). Indeed, "such challenges often involve claims under

state law . . . and '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" Carroll, 574 F.3d at 1365 (quoting McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992)). Accordingly, Meizlik is not entitled to federal habeas relief and his claims in Grounds Three and Four are due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Meizlik seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Meizlik "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Meizlik appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of April, 2020.

_Marcia Morales Howard_
**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:      Robert J Meizlik #V27471
        Douglas Squire, Esq.